## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA
## CIVIL DIVISION

EVERETT STERN
243 Falcon Ridge Road,
Saint Augustine, FL 32084

    Plaintiff,

v.                                         Case No: _____

MICHAEL T. FLYNN
26700 Weiskopf Drive
Englewood, Fl 34223-2659

AND

JOSEPH FLYNN
26571 Raphis Royale Blvd
Englewood, FL 34223-2444

AND

BINNALL LAW FIRM LLC
717 King St Ste 200
Alexandria, VA 22314

AND

JESSE BINNALL
9319 Ludgate Drive
Alexandria, VA 22309-2711

AND

JASON C. GREAVES
20348 Centerbrook Square
Sterling, VA 20165-5180

Defendants.
                                          /

## **CIVIL ACTION COMPLAINT**

1

## I.     THE PARTIES

1. Plaintiff, EVERETT STERN, is an adult individual residing at 243 Falcon Ridge Road, Saint Augustine, FL 32084, who previously resided at 890 S. Matlack Street, Apt. 460, West Chester, PA 19382-4581 and 570 Wharton Blvd., # 460, Exton, PA 19341-1183, during the time of the incident.

2. Defendant, Michael T. Flynn, resides in Florida at 26700 Weiskopf Drive Englewood, Fl 34223-2659.

3. Defendant, Joseph Flynn is residing at 26571 Raphis Royale Blvd., Englewood, FL 34223-2444.

4. Defendant, Binnall Law Firm is an established law firm with a business location of 717 King Street, Ste. 200, Alexandria, VA 22314. According to FEC campaign registries the Binnall Law firm is being financed by the Donald J. Trump 2024 Presidential Campaign.

5. Defendant, Jesse Binnall is the owner and lead attorney at the Binnall Law firm. Jesse Binnall resides at 9319 Ludgate Drive, Alexandria, VA 22309-2711.

6. Defendant, Jason Greaves is an attorney at the Binnall law firm and resides at 20348 Centerbrook Square, Sterling, VA 20165-5180.

## II.    BASIS FOR JURISDICTION

Under 28 U.S.C.S. 1331, the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, and Under 28 U.S.C.S. 1332 that grants federal courts jurisdiction in all civil actions between citizens of different states.

At all times relevant to the subject of this matter, the Plaintiff has been a law-abiding citizen domiciled within the Commonwealth of Pennsylvania. The Plaintiff has consistently garnered the respect, confidence, and esteem of their neighbors and the broader community, and has maintained

2

an untarnished record, devoid of any criminal conduct, offenses, or violations of the law that might derogate from the high regard, trust, and esteem accorded to them, to which they are rightfully entitled.

After the aforementioned period, specifically on January 24, 2024, the individual identified as Plaintiff, Everett Stern, relocated from Plaintiff's principal residence in Pennsylvania, where Plaintiff had resided for a duration of time exceeding 10 years. It is noteworthy that the alleged defamatory acts transpired within the jurisdiction of Pennsylvania, during the Plaintiff's residency therein.

### III.   STATEMENT OF CLAIM

#### COUNT I - LIBEL DEFAMATION
#### PLAINTIFF V. DEFENDANTS

For background information only, Plaintiff, Everett Alexander Stern's, extraordinary life journey has been a testament to his unwavering dedication to truth, integrity, and the preservation of freedom. Born in New York City and raised in West Palm Beach, Florida, Stern's formative years set the stage for a career marked by courage and resilience.

After graduating from Wellington High School in 2002, Stern embarked on a journey of higher education, driven by a thirst for knowledge and a commitment to making a positive impact on the world. In 2008, Plaintiff earned a Bachelor of Arts degree from Florida Atlantic University, showcasing his academic prowess and laying the groundwork for his future endeavors. Continuing his educational journey, Stern went on to achieve a Master's in Business Administration from Stetson University in 2010.

Stern's life took a dramatic turn when he became a whistleblower in one of the most significant financial scandals in recent history – the HSBC money laundering scandal.

Joining HSBC as an anti-money laundering compliance officer in October 2010, Stern's diligence and commitment to justice soon uncovered a shocking revelation: HSBC was laundering billions of dollars for drug cartels, terrorist organizations, and sanctioned countries.

Undeterred by the gravity of the situation, Stern took the courageous step of blowing the whistle on HSBC's illicit activities. His actions led to a landmark moment in 2012 when HSBC faced a staggering $1.9 billion fine from U.S. authorities, marking it a historic penalty for the financial institution and the industry (Exhibits B, C, and D).

Pre-HSBC, Stern's commitment to justice led him to seek a position with the Directorate of Operations, the clandestine field operations arm of the Central Intelligence Agency (CIA). Though turned down shortly before graduating, this experience underscored Stern's dedication to serving his country and combating illicit activities on a global scale.

In the aftermath of the HSBC scandal, Stern founded Tactical Rabbit, a private intelligence agency, with a clear mission – to fight corruption, promote justice, and defend the Constitution of the United States against all enemies, both foreign and domestic. As the CEO and Intelligence Director of Tactical Rabbit, Stern has continued to showcase his commitment to ethical business practices, strategic intelligence gathering, risk assessment, and due diligence.

Beyond his professional achievements, Stern emerged as a prominent advocate for transparency and ethical conduct in the financial sector. His journey from whistleblower

to public speaker highlights his commitment to educating others on corporate ethics, financial crimes, and the vital role of whistleblowing in maintaining a just society.

Stern's influence extends beyond the boardroom and into the political arena. In 2022, he entered the U.S. Senate race in Pennsylvania as a Republican candidate, later opting to run as an independent write-in candidate. Though withdrawing from the race, Stern maintained his commitment to principles, endorsing Democrat John Fetterman over the Republican nominee, Mehmet Oz. Everett Stern did not want a Trump-backed candidate in office (Exhibit F).

In addition to his political involvement, Stern found himself at the center of a plot involving former U.S. National Security Advisor Michael Flynn. Stern's resilience shone through as he alerted the FBI to an alleged extortion attempt, testifying before the House Select Committee Investigating the January 6 Capitol attack (Exhibits E and G).

Everett Stern's life story is one of resilience, courage, and a relentless pursuit of justice. From his early years in New York City to becoming a key figure in the fight against financial crimes, his journey stands as a testament to the impact one individual can have on corporate ethics, compliance, and the pursuit of truth. Now residing in Florida with his wife and son, Stern continues to embody the principles that have defined his extraordinary and impactful career.

Under well-established legal principles delineated in *Milkovich v. Lorain Journal Co.*, 497 U.S. 20, and *Krajewski v. Gusoff*, 2012 PA Super 166, 53A.3d 793, 804, it is imperative to recognize that where statements of 'opinion' on matters of public concern reasonably infer false and defamatory facts concerning public officials, the burden rests upon such individuals to establish that the statements

5

were disseminated with knowledge of their false implications or with reckless disregard for their veracity.

The Defendants, with evident intent to defame and injure the Plaintiff and to detrimentally affect his good name, fame, credit, and reputation, engaged in a deliberate, malicious, wicked, and illegal campaign by making a series of statements directly targeting the Plaintiff through the social media platform X (formerly known as Twitter). Noteworthy instances of these statements were also disseminated to other platforms, including the New York Times, the Guardian, and Rumble. Exhibit A provides a representative sampling of these statements, some of which were expunged by the Defendants. However, as part of the discovery process, the social media company X will furnish the deleted statements.

The defamatory statements, in a direct and proximate manner, resulted in substantial financial losses for Plaintiff, impacting both his individual enterprise, Tactical Rabbit Inc., and the broader spectrum of his personal business dealings and relationships. These wantonly false statements, made with reckless disregard for the truth, constitute actual and intentional malice, and despite their manifest falsity, have inflicted direct harm upon the Plaintiff, who, as a public figure, relies substantially upon public perception and opinion, particularly as it pertains to the Plaintiff's character and reputation.

To establish a prima facie case of defamation, the Plaintiff must demonstrate the defamatory character of the communication, its publication by the Defendants, its application to the Plaintiff, the recipient's understanding of its defamatory meaning, the understanding by the recipient of its intended application by the Plaintiff, and the special harm suffered by the Plaintiff from its publication. Additionally, an allegation of abuse of a conditionally privileged occasion further augments the Plaintiff's case.

The Plaintiff categorically denies any commission of the specific crimes attributed to him by the Defendants or any accessory, aider, or abettor involvement in said criminal acts. Furthermore, the Plaintiff has maintained an unstained record of peaceable and law-abiding conduct within the various communities he has inhabited since his birth, until his relocation to Florida on January 24, 2023.

The Defendants were cognizant or should have been cognizant, that the contentions and accusations embedded in the Defendants' "Statements," such as labeling the Plaintiff as the purported Fake HSBC Whistleblower, asserting mental instability, branding him as a pathological liar, alleging false statements to the FBI and January 6th Committee, imputing deceit to the American public, and accusing him of impersonating a Federal Agent, were baseless. Moreover, the Defendants were or should have been aware that the settlement between Plaintiff's insurance company and Defendant Michael T. Flynn was premised on the merits of the case, rather than being a mere business decision by the insurance company. Additionally, the assertion that Plaintiff defamed Defendant Michael T. Flynn is unfounded.

The Defendants, with knowledge or constructive knowledge of the falsity of the aforementioned statements, intentionally, maliciously, and with reckless disregard for their veracity and falsity, negligently or carelessly disseminated said statements.

It is pertinent to note that the publication of factually partially correct statements that convey a false impression may give rise to actionable claims, either as defamation, provided it has a grievous effect on one's reputation, or as a false light invasion of privacy, contingent upon the statement being highly offensive to a reasonable person. The jury's response to interrogatories indicating that the Defendants did not make false statements about the Plaintiff, but portrayed him in a false light, is consistent and supportive of a verdict in favor of the Plaintiff on both defamation and false light invasion of privacy grounds.

Exhibit K serves to present the settlement agreement executed on January 5, 2023, between Michael T. Flynn and Everett Stern in the Federal lawsuit Flynn v. Stern, concerning the matter adjudicated in the United States District Court for the Middle District of Florida, Case No. 8:22-cv-01250 (Exhibit L). Subsequently, on December 5, 2023, Flynn initiated a second defamation lawsuit in the Florida State Court for Saint Johns County defamation claims (Exhibit O). Crucially, the settlement, orchestrated by Homesite Insurance Company, pertained to the first defamation lawsuit involving Plaintiff in the current litigation, and it explicitly did not entail any admission of liability.

Notably, the settlement proceeds were expressly acknowledged as a compromise of a disputed claim, disavowing any admission of liability on the part of the Releasees. The Plaintiff, Everett Stern, was absolved of any defamation, and the settlement was not predicated on the merits of the case but rather constituted a business decision by Homesite Insurance Company to mitigate defense costs and avert a potential $250,000,000 claim for a settlement amount of $150,000.

Following the execution of the settlement on January 5, 2023, the Defendants, personally and through the Binnall Law Firm, disseminated statements on Twitter, as evidenced in Exhibit A. These statements contained knowing and reckless falsehoods regarding the settlement agreement, with the intention of harming Everett Stern's reputation. The defamatory remarks, made by Jesse Binnall, Jaeson Greaves, and Michael T. Flynn, were deliberately crafted to provoke an intentional attack against Plaintiff, labeling him as a liar and insinuating guilt for conduct he did not engage in.

Moreover, the Defendants made defamatory statements directly to Everett Stern's business associates, such as Jason Greaves, asserting that Stern is a pathological liar and a fake HSBC whistleblower. Despite Stern's invitation to speak at Emory University due to his role as a whistleblower in the HSBC Banking Scandal, Jason Greaves personally, not through the Binnall Law firm's official Twitter handle, but his personal account, made harassing and defamatory statements, as delineated in Exhibit A.

8

The defamation perpetrated by the Defendants goes beyond social media, extending to interviews with the New York Times, wherein false statements were made about Michael Flynn's acquaintance with Ivan Raiklin, who is a Green Beret and a crucial figure in ground operations related to overturning the 2020 election. The Defendants' denials of knowledge regarding Raiklin to the New York Times were highly defamatory against Everett Stern.

In summary, the Defendants, through their calculated dissemination of false information, have intentionally inflicted severe harm upon Everett Stern's reputation, placing his life at risk. Their intentional and malicious conduct, particularly in the context of General Flynn's association with the Quannon Movement, which includes right-wing extremists involved in the Capitol attack on January 6th, raises significant concerns about the safety and well-being of the Plaintiff.

The Defendants' public statements were widely circulated internationally and directly targeted and read by Plaintiff's neighbors, friends, family, business associates, journalists, and diverse other persons.

The Defendants' public declarations, widely disseminated on an international scale, were specifically directed at, and perused by Plaintiff's neighbors, friends, family, business associates, journalists, and various other individuals. Consequently, the Plaintiff has been subjected to scandal, reproach, and the imputation of odium, scorn, and contempt within his community and professional circles. Such allegations have given rise to an unwarranted suspicion of the Plaintiff's involvement in crimes and fraudulent practices, resulting in tangible adverse effects on his business, reputation, and peace of mind, causing substantial financial losses and damages.

The Defendants' subjective conduct, characterized by a reckless disregard for the truth, establishes their liability for wantonly committing defamation against Plaintiff. Under Pennsylvania Law, 42 Pa. C.S. § 8344, specifically addressing the requisites for the recovery of damages in cases

9

of libel and slander, no damages shall be awarded unless the satisfaction of a jury, under the court's direction, establishes that the publication was maliciously or negligently made. In the presence of malice or negligence, the jury may then award damages as it deems appropriate, as articulated in 42 Pa. C.S. § 8344.

Plaintiff contends and maintains the assertion that the Defendants' intentional and reckless disregard for the truth, as delineated herein, satisfies the standard of actual malice. Additionally, Plaintiff, in the subsequent count, alleges cogent assertions against the Defendants, asserting liability based on negligence.

## COUNT II NEGLIGENCE
## PLAINTIFF v. DEFENDANTS

The Plaintiff hereby incorporates, by reference and as if fully set forth at length, the contents of the preceding paragraphs.

It is asserted that the Defendants bore a duty of care towards the Plaintiff to ascertain the accuracy and truthfulness of the information and facts disseminated. The Plaintiff maintains that a prima facie case for negligence has been delineated based on the aforementioned contentions.

It seems Defendants, and especially Michael Flynn, are at war with anyone and everyone, especially Plaintiff Everett Stern, who does not observe, garner, and follow their beliefs:

> The general tried to persuade Donald Trump to use the military to overturn the 2020 election. A year later, he and his followers are fighting the same battle by other means.
> …
>
> But by that point, Flynn was in fact calling for sending in the military to the contested states. Byrne told me that by Dec. 16, he had lined up a series of options for the president to consider, including using uniformed officials to confiscate voting machines and ballots in six states. Flynn suggested to Byrne that the National Guard and U.S. marshals in combination would be the most suited to the job.

10

Michael Flynn is still at war. New York Times Magazine 2.4.22 Found at https://www.nytimes.com/2022/02/04/magazine/michael-flynn-2020-election.html.

It is preposterous that Michael Flynn continues to single out and defame Plaintiff when he continues to come under fire for his own illicit conduct. In 2017, Defendant Michael Flynn pled guilty for lying to the FBI.

> But in a statement sent by his lawyers, Flynn admitted that he has made mistakes. I recognize that the actions I acknowledged in court today were wrong, and, through my faith in God, I am working to set things right," he said. "My guilty plea and agreement to cooperate with the Special Counsel's Office reflect a decision I made in the best interests of my family and of our country. I accept full responsibility for my actions.

(Exhibits M and N).

In 2022, Defendants Michael Flynn and Joseph Flynn attested that they had no relationship with Ivan Raiklin, a former Green Beret and lawyer or Velma Ann Ruth, Patriots Caucus member. However, photographs and Raiklin's own admissions proved otherwise.

> Raiklin has often emphasized his dealings with Flynn. When he briefly tried to run for the U.S. Senate in Virginia in 2018, Raiklin was endorsed by Flynn's son Michael Flynn Jr., and he sat in the federal courtroom next to Sidney Powell during the elder Flynn's hearing that December; Flynn has been photographed with Raiklin elsewhere and once described him on Twitter as "a true American patriot." Beyond that, Flynn has never confirmed their relationship, and Flynn's brother Joe Flynn, in a brief statement on behalf of their family, said, 'We do not have any association with Ivan Raiklin.'
>
> He [Raiklin] kept referring back to Mike Flynn as this linchpin and cog. (Exhibit P).

Defendants Michael Flynn and Joseph Flynn also deny knowing or having a relationship with J.D. Maddox:

> I heard a similar story from J.D. Maddox, a former C.I.A. branch chief who ran unsuccessfully for the Virginia House of Delegates last year. Maddox, who has not previously spoken publicly about his experience, told me that he was at a candidate meet-and-greet in

11

> Arlington last May when he bumped into Raiklin. Raiklin again brought up the need for election audits — and suggested tactics far beyond lobbying legislators. 'If the Democrats don't give us that,' Maddox recalled him saying, 'then violence is the next step.'
>
> Raiklin proceeded into what Maddox described as 'a wild, contortionist explanation of how they would reverse Biden's election,' involving a succession of state audits. First Arizona, then Georgia, then Wisconsin and then other state legislatures would nullify the 2020 election results, he envisioned, until Biden's victory margin would evaporate. Maddox told Raiklin he was skeptical. 'But he said he was certain it was going to happen,' Maddox told me. 'And he kept referring back to Mike Flynn as this linchpin and cog.'
>
> 'General Flynn is central to all this,' Raiklin had similarly claimed in New Hampshire when I spoke with him briefly after his talk. He refused to elaborate, so what that meant, exactly, was hard to say. In the feverish activity that now attends the 2020 election on the right, it can be difficult to distinguish conspiring from conspiracism — not least in Flynn's own statements. In an interview in late January with the right-wing conspiracy website Infowars, Flynn accused George Soros, Bill Gates and other of creating the coronavirus so they could 'steal an election" and 'rule the world.' In another interview, he floated the rumor that 'they' may be "putting the vaccine in salad dressing.' (Exhibit P).

Attached for reference and emphasis are several photographs of Michael Flynn sitting with Ivan Raiklin and Velma Ann Ruth, Patriot Caucus member and an unknown female. It is interesting to note that in Exhibit Q, one can see on the table in front of Velma Ann Ruth and the unknown female, a map of Pennsylvania counties and another stack of documents in front of Ivan Raiklin, appearing to be a stack of printouts of Congressional candidates. Exhibit R, shows Plaintiff with Velma Ann Ruth and a person who in 2021 was running for public office.
(Exhibits Q, and R).

All of the Defendants' allegations and defamatory statements against Plaintiff are categorically false, and Defendants know them to be false, and they make them with malicious intent and reckless disregard for the truth.

All of the Defendants knowingly published defamatory statements to hundreds of thousands of people on the internet, including X (fka Twitter), The New York Times, Facebook, Rumble and YouTube to name only a few. Defendants' postings, as envisioned by Defendants, have been reposted and reshared online to hundreds of thousands more people.

All of the Defendants' defamatory statements are reasonably understood to be statements of fact, rather than exaggeration or opinion, as demonstrated not just by the language used, but by the reactions and comments of thousands of people who commented and reposted Defendants' defamatory statements.

All of the Defendants' defamatory statements have directly and proximately caused Plaintiff to suffer damages, including direct damages, damages to his reputation, humiliation, embarrassment, anxiety, and fear for his safety, the safety of his family, all of which are ongoing and will be suffered in the future. In wanton disregard for Plaintiff, these damages were foreseeable by all of the Defendants.

All the Defendants are therefore liable for compensatory damages.

All of the Defendants acted with intentional and reckless disregard for the truth, as demonstrated by Defendants' desire to inflict harm, ill-will, and significant personal and economic damages to the Plaintiff.

All of the Defendants have a specific intent to harm the Plaintiff, his family, and his business, and are therefore liable for punitive damages, for which there is no statutory cap.

## IV.   JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Everett Stern, prays this Honorable Court award his claims for damages from all of the Defendants in an amount over 150,000,000 million dollars, along with

costs, injunctive relief as to prohibit republication, and damages, including punitive, special, and compensatory, as the Court deems fit, proper, and just.

## VI. CERTIFICATE OF COMPLIANCE

Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. A. I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I FURTHER CERTIFY that I have complied with the Federal Rules of Civil Procedure, filed this Complaint via the Court's electronic filing system, and served all parties via Certified Mail, Return Receipt Requested this 1st day of February 2024 as follows:

MICHAEL T. FLYNN
26700 Weiskopf Drive
Englewood, Fl 34223-2659

JOSEPH FLYNN
26571 Raphis Royale Blvd
Englewood, FL 34223-2444

BINNALL LAW FIRM LLC
717 King St Ste 200
Alexandria, VA 22314

JESSE BINNALL
9319 Ludgate Drive
Alexandria, VA 22309-2711

JASON C. GREAVES
20348 Centerbrook Square
Sterling, VA 20165-5180

Date: February 1, 2024

                                              **Everett Stern, Pro Se**
243 Falcon Ridge Road
Saint Augustine, FL 32084
202-407-5364
Stern@EverettStern.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
EVERETT STERN

## DEFENDANTS
Michael Flynn, Joseph Flynn, Binnall Law Firm, LLC, Jesse Binnall, and Jason C. Greaves

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

Attorneys *(If Known)*
Binnall Law Firm, Jesse Binnall

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**TORTS — PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- [x] 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty
**Other:**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S. Code § 4101
Brief description of cause:
Defamation, Libel, Slander

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 150,000,000.

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.